NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JENNIFER POHL,

    Plaintiff,

v.

NANCY BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:18-cv-11675-BRM

OPINION

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Jennifer Pohl's ("Pohl") appeal from the final decision of Nancy Berryhill, the Acting Commissioner of Social Security ("Commissioner"),[1] denying her application for Social Security Disability Benefits. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

**I.**    **BACKGROUND**

    **A. Procedural History**

On November 25, 2013, Pohl protectively filed for disability insurance benefits alleging

---

[1] Upon the Appeals Council's Order denying Pohl's request for a review of the Administrative Law Judge's ("ALJ") decision, the ALJ's decision became the final decision of the Commissioner. (Tr. 1.)

disability since May 1, 2011 (the "Onset Date"). (Tr. 206-07.) On December 19, 2013, Pohl also protectively filed a Title XVI Application for Social Security Disability Insurance ("SSDI") benefits with the same Onset Date. (Tr. 208-13.) On August 4, 2014, the Commissioner denied Pohl's claims for benefits. (Tr. 137-42.) On October 6, 2014, Pohl filed for a Request for Reconsideration of the Commissioner's decision (Tr. 143), and on August 4, 2015, Pohl's Request for Reconsideration was denied (Tr. 147-49).

On September 14, 2015, Pohl timely filed a Request for Hearing before an ALJ. (Tr. 153.) On August 7, 2017, a hearing was held before the Hon. Kenneth Ayers, ALJ. (Tr. 26.) On October 27, 2017, ALJ Ayers issued a decision concluding that Pohl is not disabled pursuant to Section 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act, and that as such, she is not entitled to disability insurance or SSDI benefits. (Tr. 25-45.)

On November 16, 2017, Pohl timely filed a Request for Review of the ALJ's decision to the Appeals Council. (Tr. 203-05.) On May 17, 2018, the Appeals Council denied Pohl's Request for Review, thereby becoming the final agency decision. (Tr. 1-5.) Therefore, having exhausted her administrative remedies, Pohl appealed to this Court on July 16, 2018. (ECF No. 1.)

**B. Factual Background**

Pohl was 31 years old on the Onset Date, qualifying her as a "younger individual" pursuant to the Commissioner's regulations. (Tr. 84); 20 C.F.R. §§ 404.1563(c), 416.963(c). Pohl graduated from college and has past relevant work experience as a case worker, which is classified as a sedentary, skilled position. (Tr. 76; 234.) Following the Onset Date, Pohl lived alone in a house, cared for an adopted dog, and cared for her own personal needs independently, such as cooking, cleaning, and laundry. (Tr. 249-51; 266-68.) Additionally, during this period, Pohl drove, exercised daily, went out with friends and family, engaged in physical activities such as hiking and archery,

2

and visited a gym. (Tr. 252-53; 268-70; 349-52; 426; 467; 626; 643.)

The record demonstrates that Pohl worked full-time following the Onset Date. (Tr. 342-54.) For instance, in August 2013, Pohl indicated that she was "employed as a social worker" and wished to return to "yoga, Pilates and the gym setting." (Tr. 346.) Furthermore, in July 2014, Pohl reported that she planned to start a new job in January 2015. (Tr. 455.) Thereafter, Pohl discontinued her physical therapy because she was "unable to maintain scheduled appointments due to returning to employment." (Tr. 457.)

During the hearing, an impartial vocational expert ("VE") testified absent objection from either party. (Tr. 75.) The VE testified, in pertinent part:

> Q: Have you reviewed the file and listened to the claimant's testimony regarding work history?
>
> A: I have, your Honor.
>
> Q: Can you classify the past work?
>
> A: The class - - Yes, I can, Your Honor. I'm sorry.
>
> . . .
>
> A: Okay. The claimant's past relevant work would be as a case worker. The DOT code is 195.107-030. It's an SVP of 7. It's a sedentary occupation. Although I couldn't figure out from the claimant's testimony whether or not it rose to light or not.
>
> Q: Okay. So let's turn to the hypotheticals. So I'd like to assume a hypothetical claimant of the same age, education, and work experience at the nonexertional level only. The hypothetical claimant can work in humidity and wetness occasionally. Can have occasional exposure to dust, odors, fumes and pulmonary irritants, and can work occasionally in extreme cold and occasionally in extreme heat.
>
> In addition, the hypothetical claimant is limited to performing simple routine tasks. As to the use of judgment and dealing with changes in the work setting is limited to simple work-related decisions and can interact with supervisors frequently, coworkers

> occasionally and the general public occasionally. Given these limitations, would the hypothetical claimant be able to do the past work?
>
> A: The hypothetical claimant would not be able to perform the past relevant work, Your Honor.
>
> Q: Would there be any other work?
>
> A: There would. Such individual could perform the work of a cleaner. The DOT code is 323.687-014. It's an SVP of 2. It's a light physical demand level. There are 926,240 jobs in the national economy. Such individual could be a packer inspector. DOT code is 784.687-042. It's an SVP of 2. It's a light physical demand level. There are 713,130 jobs in the national economy. Such an individual could perform the work of a hand packager. The DOT code is 920.587-018. It's an SVP of 2. It's a medium physical demand. There are 693,170 jobs in the national economy.
>
> Q: Okay. Now, if I was to drop the exertional level to light and in addition I was to add postural limitations . . . would there be a third job at light with those limitations?
>
> A: Yes, Your Honor, there would. Such individual could perform the job of sorter. The DOT code is 529.687-186. It's an SVP of 2. It's a light physical demand level. There are 35,290 jobs in the national economy.
>
> Q: Now if I took the same light hypothetical that we just discussed and I dropped that to sedentary, would there be any other work?
>
> A: There would. Such individual could perform the work of a document preparer. The DOT code is 249.587-018. It's an SVP of 2. It's a sedentary occupation. There are 2,944,420 jobs in the national economy.

(Tr. 76-78.)

The ALJ relied on the conclusions reached by the VE, and ultimately determined, among other things: Pohl has not engaged in substantial gainful activity since the Onset Date; Pohl has the severe impairments of degenerative disc disease, lumbar spine disc herniation, cervical spine disc herniation, asthma, depressive disorder, anxiety disorder, and personality disorder; Pohl does

not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; Pohl has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. ¶¶ 404.1567(b) and 416.967(b); Pohl is unable to perform any past relevant work; Pohl was a "younger individual" as of the Onset Date; there are jobs that exist in significant numbers in the national economy that the Pohl can perform; and Pohl has not suffered a disability as of the Onset Date, pursuant to the Social Security Act, 20 C.F.R. ¶¶ 404.1520(g) and 416.920(g). (Tr. 28-37.)

## II. STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's

decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. §§ 423(d)(1)(A), 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

7

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146-47 n.5). An administrative law judge bears the burden of proof for the fifth step. *See id.* at 263.

## IV. DECISION

Pohl argues that the ALJ erred by failing to adequately consider and discuss evidence of her demyelinating disease of the central nervous system and by not adequately allowing for her physical and mental impairments in determining the RFC. (ECF No. 10 at 26-40.) The Commissioner counters that Pohl did not establish disability under the stringent statutory and regulatory standards of the Social Security Act, and Pohl's arguments provide no basis for disrupting the ALJ's decision, as a diagnosis of demyelinating disease of the central nervous system does not establish a severe impairment and the ALJ's RFC determination captured all of Pohl's credibly established limitations. (ECF No. 13 at 8-18.) This Court considers each of Pohl's arguments in turn.

First, Pohl contends the ALJ "did not address whether [Pohl] had the impairment of demyelinating disease of the central nervous system," and if so, whether the disease was a severe or non-severe impairment. (ECF No. 10 at 26.) As such, Pohl argues the ALJ erred at step two of the five-part sequential evaluation process. (*Id.*) Pohl further contends that, in light of the evidence presented demonstrating her demyelinating disease of the central nervous system,[2] the ALJ's failure to evaluate and discuss the combined effects of such disease was improper and ran afoul of SSR 02-1p. (*Id.* at 26-29.) Pohl maintains the ALJ was obliged to "at least consider whether [Pohl] has demyelinating disease of [the] central nervous system" and failed to adequately explain why such disease was not found. (*Id.* at 29-30.)

Pohl's argument is erroneous. Nothing in the medical proofs provided indicate that Pohl suffers from demyelinating disease of the central nervous system, including those cited by Pohl in

---

[2] Pohl contends the report from Dr. Haodong Song, a neurologist, and records from Matawan Medical Associates provide evidence of demyelinating disease of the central nervous. (Tr. 530; 639-40.)

9

her brief. On the contrary, the record shows Pohl was advised to consult a neurologist following her March 2016 abnormal brain MRI. (Tr. 526-30; 617; 629.) Dr. Song then reported Pohl's "neurological exam did not reveal apparent cranial abnormalities or sensorimotor deficits" and concluded the abnormalities "were less likely due to CNS demyelinating disorder/MS." (Tr. 631-33; 640.) No other medical provider diagnosed Pohl with demyelinating disease of the central nervous system. Accordingly, there is nothing in the relevant treatment records to support a finding that Pohl was diagnosed with demyelinating disease of the central nervous system or that such a diagnosis significantly limited her work-related abilities. (Tr. 526-30; 617; 629; 631-33; 640; 773-78.)[3]

Additionally, Pohl has not demonstrated that the ultimate outcome would have been different had the ALJ determined that Pohl suffered demyelinating disease of the central nervous system, even if it would constitute a severe impairment, at step two. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's decision"). Finally, Pohl argues that the ALJ failed to meaningfully discuss her alleged demyelinating disease of the central nervous system, thereby constituting reversible error. On the contrary, the ALJ succinctly summarized her claim in the opinion and outlined grounds from the determination that Pohl's alleged demyelinating disease of the central nervous system did not constitute a severe impairment, stating:

> An MRI of the brain dated March 22, 2016, showed multiple foci of increased FLAIR and T2 signal seen throughout the deep white

---

[3] Notably, the ALJ did not conclude the analysis at step two. Rather, the ALJ determined that Pohl suffered from severe impairments and subsequently evaluated the effect of Pohl's impairments on her ability to work and in determining her RFC throughout the remaining steps of the five-step analysis. (Tr. 28-30.) Accordingly, any error the ALJ may have made at step two is rendered harmless. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (holding because "the ALJ found in [petitioner's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.")

> matter. Differential diagnosis includes a demyelinating process, migraine-type changes and less likely Lyme's disease. (Exhibit 15F pp. 4-5.) The claimant was referred to a neurologist.
>
> On May 3, 2016, the claimant was seen by Haodong Song, M.D., for an initial evaluation. The claimant had multiple complaints including headaches, sensory disturbance and dizziness. She said the symptoms started about a year before, and had become progressively worse. She described baseline daily headache, with frequent exacerbation, to severity 10/10. There was no apparent accompanying photophobia or phonophobia. She indicated that she had been prescribed Imitrex injections, with no effect; and was now taking amitriptyline for preventive treatment and Fiorcet for symptomatic relief, with no significant improvement. She also complained of symptoms including fatigue, joint pain, neck pain, dizziness, tingling and numbness in the hands, and increased anxiety. She said she felt her knee tended to buckle. It was recognized that she had had a recent brain MRI performed, which revealed multiple white matter signals abnormalities. Overall, her neurological exam did not reveal apparent cranial abnormalities or sensorimotor deficits. It was opined that her headaches were not typical for migraine or tension type of headaches. It was further opined that the claimant's brain MRI revealed white matter signal changes, raised the suspicion of demyelinating process. She also has numerous non-specific complaints, possibility of an underlying systemic condition or functional disorder might need to be considered. The claimant was given a trial of Topomax.
>
> . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record for the reasons explained in this decision.

(Tr. 33-34.)

Second, Pohl contends the RFC did not adequately allow for her documented mental and physical impairments in determining the RFC. (ECF No. 10 at 30-40.) Specifically, Pohl argues the ALJ did not adequately consider the physical impairments of her head, neck, and hands – as

11

caused in part by her demyelinating disease of the central nervous system – and her mental impairments as documented by her psychologist, Dr. Jay Gordon. (*Id.*) Pohl's argument is erroneous.

An ALJ is tasked with formulating a claimant's RFC based on the entire medical record and other evidence presented at the hearing. 20 C.F.R. § 404.1527(d)(2). Here, the ALJ carefully and adequately considered all the relevant medical proofs before providing a detailed explanation for each portion of the determined RFC.[4] (Tr. 30-35.) For instance, the ALJ concluded Pohl was capable of light work with certain environmental limitations, and supported this conclusion with citations to the record indicating that Pohl reported that her medications controlled her musculoskeletal pain and allowed her to function normally in daily activities. (Tr. 687; 709; 713.) Moreover, Pohl's treatment for her musculoskeletal pain consisted only of taking medications, undergoing epidural steroid injections, and performing home exercises and physical therapy. (Tr. 334-59; 414-24; 684-722.)

---

[4] The ALJ determined Pohl's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] can climb ramps and stairs frequently; stoop frequently; kneel frequently; crouch frequently; and crawl frequently. The claimant can work with exposure to unprotected heights occasionally; with exposure to moving mechanical parts occasionally; with exposure to humidity and wetness occasionally; with exposure to dust, odors, fumes and pulmonary irritants occasionally; and with exposure to extremes of cold and heat occasionally. The claimant is limited to performing simple, routine tasks; and to making simple work-related decisions. The claimant can interact with supervisors frequently; can interact with coworkers occasionally; and can interact with the public occasionally.

(Tr. 30.)

The ALJ further noted that Pohl's physical examinations were largely normal and that Pohl's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 34.) While Pohl now contends that she suffers from pain in the neck, back, and hands that prevent her from performing the tasks outlined in the RFC – each complaint of which the ALJ considered – Pohl's physical examinations from after the Onset Date did not demonstrate such debilitating ailments. On the contrary, the evidence indicated that her treatment for headaches had been successful (Tr. 536) and Pohl regularly exhibited normal motor strength in her hands as well as a normal range of motion. (Tr. 332-64; 422-44; 685-99; 707-21.) Pohl's brief merely regurgitates her testimony as well as certain evidence contained in the medical records, all of which the ALJ considered in determining the RFC. (ECF No. 10 at 30-36.) Pohl fails entirely to demonstrate how the ALJ erred and she fails entirely to allege that the ALJ's conclusions went against the weight of the evidence. *See Chandler v. Comm'r of Sec. Soc. Admin.*, 667 F.3d 356, 359 (3d Cir. 2011) (holding that courts "are not permitted to reweigh the evidence or impose their own factual determinations" over those of the ALJ when backed by substantial evidence).

Next, Pohl contends the ALJ did not adequately allow for the mental impairments in determining her RFC. (ECF No. 10 at 36-40.) Specifically, Pohl argues the ALJ did not give sufficient weight to the findings of Dr. Gordon. (*Id.*) Pohl's argument is erroneous. As with her arguments concerning her physical impairments, Pohl merely recites medical evidence in the record that was considered by the ALJ in his decision. For instance, Pohl notes that Dr. Gordon determined she had "potential attention problems," "limitations in her ability to quickly and effectively process stimuli," and a mild impairment with respect to her acquisition and recognition of words and geometric shapes. (Tr. 381-82.) Pohl further notes that she was diagnosed with, *inter*

*alia*, major depressive disorder and personality disorder. However, the ALJ took each of these evidence-backed diagnoses into consideration in determining the mental limitations of her work abilities, stating in pertinent part:

> It was opined that based on the evaluation, history and testing, [Pohl's] presentation was consistent with major depressive disorder, generalized anxiety disorder, and personality disorder not otherwise specified. It was noted that although symptoms of ADHD were reported, it was opined that these symptoms were likely secondary to personality and mood disorders rather than from ADHD. Based on testing, all areas of cognitive functioning were found to be in the average range and within expectations for this individual. There were select tests of mental processing speed, which were found to be impaired, but this was secondary to being over-concerned with drawing straight lines rather than working as quickly as she could. There was variability on memory tests with performance on most memory tasks in the average range. However, performance on a list learning task was in the moderately impaired range. Again, this was likely secondary to emotional factors rather than due to memory impairment per se. The results of objective personality testing suggested the presence of significant emotional distress, anxiety, depression, and possibly the presence of delusions. However, there was no evidence of a major thought disorder, delusional ideations, or hallucinatory phenomena observed, reported by [Pohl], or reported by her mother. Individual psychotherapy and biofeedback were recommended. Psychiatric treatment was recommended for pharmacological intervention to address mood complaints.

(Tr. 33.)

Indeed, the ALJ's decision gives weight to the opinions of Dr. Gordon and is also well supported by substantial medical evidence in the record. For instance, Pohl has no history of psychiatric in-patient treatment (Tr. 478), was discharged from her therapy program because she returned to work (Tr. 457), reported "doing well" and exhibiting a stable mood and manageable anxiety (Tr. 408; 458-63; 730; 771), and repeatedly denied experiencing negative mental health side-effects from her prescription medications. (Tr. 385-95; 408; 458-63; 467-75; 723-31). Moreover, Pohl's mental health examinations were unremarkable and she routinely denied ever

experiencing delusions, hallucinations, or suicidal thoughts. (Tr. 333-34; 342-45; 358-63; 386-94; 455-81; 723-71.)

Pohl's contention that the ALJ overlooked abnormal findings in her medical proofs in determining her RFC is unfounded. As with her arguments concerning her alleged physical limitations, Pohl merely recited several findings by medical experts – which were adequately considered by the ALJ – and requests this Court to intervene arguing erroneously that the ALJ did not account for these impairments. This Court may not reweigh evidence considered by an ALJ to reach a contrary conclusion. *See Williams*, 970 F.2d at 1182; *see also Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (holding that the Court "may not substitute [its] own judgment for that of the fact finder"); *see also Chandler*, 667 F.3d at 359. Even if this Court would have reached a different conclusion, it must defer to the ALJ on issues of fact when such determinations are supported by substantial evidence in the record, as they are in this matter. Accordingly, the Commissioner's decision is **AFFIRMED**.

## V. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED.**

**Date:** August 19, 2019              */s/ Brian R. Martinotti*
                                                       **HON. BRIAN R. MARTINOTTI**
                                                       **UNITED STATES DISTRICT JUDGE**